# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 15, 2011

No. 10-31157
Summary Calendar

Lyle W. Cayce
Clerk

MARILYNN GOREE,

Plaintiff-Appellant,

v.

COMMISSION LINCOLN PARISH DETENTION CENTER,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:09-CV-745

Before HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Marilynn Goree appeals the district court's grant of summary judgment in favor of Defendant-Appellee Lincoln Parish Detention Center on Goree's claim of employment discrimination. We AFFIRM.

## I. Facts and Proceedings

Marilynn Goree, an African-American female, was employed at the Lincoln Parish Detention Center (LPDC) from 1988 to 2008. During that time, she

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31157

received regular pay raises and promotions, and was given high performance reviews. In April 2004, she was named as the interim superintendent/warden of LPDC. She never received the title of permanent superintendent/warden. Goree contends that her predecessors, all of whom were male, were not required to serve in the interim position but were immediately appointed as permanent Superintendent/Warden. Furthermore, Goree contends that LPDC refused to give her the institutional and personnel support that it gave her predecessors.

Long before Goree's claim arose, LPDC faced regular annual deficits and prisoner overcrowding. In 2006, LPDC began contracting with LaSalle, a private correctional center management company which is not a party to this appeal, to address these concerns. In 2007, during a temporary evaluation period in which LaSalle took over operations of LPDC, LPDC authorized LaSalle to name Sue Holliday as the warden of the facility, replacing Goree in that role. Goree remained employed as the interim superintendent. She received the same salary and retained the same responsibilities, including those associated with the warden position. Goree claims the hiring of Holliday was a "sham" designed to skirt possible charges of discrimination. In 2008, LPDC's directing Commission voted unanimously to privatize the facility and contract with LaSalle for its management and operation. The relationship with LaSalle offered cost-cutting plans as well as access to other LaSalle facilities that could alleviate LPDC's overcrowding problem.

As part of the transfer of authority, LaSalle received discretion over the appointment of LPDC's managers, including the superintendent. LaSalle's leadership indicated that they were not fully pleased with Goree's results and did not believe "she had the strengths required to succeed in the position under LaSalle's management." Goree was replaced by Ed Thompson, an African-

American male employed by LaSalle, who first became involved with LPDC during LaSalle's evaluation period. According to Johnny Creed, LaSalle's Chief of Operations, Thompson was chosen because Creed was pleased with his past work and believed "he had the skills necessary" for the role. At the LPDC Commission's request, LaSalle created an administrative role for Goree to fill so she would not be terminated. In April 2008, as LaSalle transitioned into power, it offered current LPDC employees two pay options for continuing in their current positions. Both options entailed a significant pay cut for Goree, who indicated that she would not accept either option. As a result, she was terminated in June 2008.

On October 28, 2008, Goree filed a charge questionnaire with the Equal Employment Opportunity Commission (EEOC) and subsequently received a right-to-sue letter. She filed her lawsuit on May 6, 2009 in district court alleging, among other things, gender based discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Goree alleges that she was discriminated against during her tenure as interim Superintendent because the LPDC did not accord her the same privileges and authority as her male-predecessors, that her pay was not raised to reflect her increased duties and responsibilities, and that the LPDC removed her from her position as interim Superintendent and ultimately terminated her employment based on gender discrimination. Goree seeks to recover damages, including an award of lost wages and benefits, in addition to attorneys' fees.

After discovery, LPDC moved for summary judgment. The district judge granted LPDC's motion on two grounds. With regard to the alleged discrimination relating to Goree's interim status, the district court found that Goree had not exhausted her administrative remedies because her EEOC charge

No. 10-31157

did not list complaints predating privatization. The district court also granted summary judgment on Goree's termination claims after privatization. It found that she had not made a *prima facie* case of discrimination because her replacement by another female (Sue Holliday) and another African-American (Ed Thompson) failed to satisfy the elements of a *prima facie* case.[1]  However, the trial court continued its analysis, finding that even if Goree had made a *prima facie* case, summary judgment was appropriate because she had not succeeded in showing that the legitimate justifications for Goree's termination offered by LPDC—the necessary privatization of the facility, LaSalle's determination that Goree was less-qualified than Thompson, and Goree's refusal of an offer of continued employment—were merely pretext. Goree claims these reasons were mere pretext because the problems sought to be addressed by the privatization existed continuously and without intensifying before LaSalle was chosen to take over; because a member of the Commission had a questionable relationship with LaSalle; and because Goree had received high performance reviews and positive remarks from LaSalle executives, suggesting that she was highly qualified for the new position.  The district court rejected these contentions as "exaggerated, unsubstantiated by the evidence, and/or wholly irrelevant to a determination of pretext."

Goree appeals the trial court's grant of summary judgment on both issues, but only addresses the grounds cited in the latter.  She does not raise any objections to the conclusion that she failed to exhaust her administrative

---

[1]The district court expressed uncertainty as to what protected characteristics Goree alleged as the basis for her discrimination claim, and assumed that she based her charge on race and gender discrimination.  On appeal, it is clear that Goree only claims gender discrimination.

No. 10-31157

remedies.  Goree claims that the trial court did not construe the evidence in the light most favorable to her, as summary judgment requires, but instead made impermissible credibility determinations favoring LPDC when evaluating both her *prima facie* case and her argument of pretext.

## II. Standard of Review

We review the district court's grant of summary judgment *de novo.  See Paul v. Landsafe Flood Determination, Inc.*, 550 F.3d 511, 513 (5th Cir. 2008). Summary judgment is appropriate if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Thus, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In the context of employment discrimination claims, summary judgment is appropriate for the defendant if the plaintiff fails to establish a *prima facie* case, or if the defendant presents evidence of a legitimate reason for the employment decision and the plaintiff does not create a genuine fact issue over whether the articulated legitimate reasons are pretextual. *Guthrie v. Tifco Industries,* 941 F.2d 374, 378 (5th Cir. 1991), *cert. denied,* 503 U.S. 908 (1992).

## III. Discussion

As an initial matter, because Goree has failed to challenge the district court's finding that she failed to exhaust her administrative remedies with regard to her earlier claims, she has abandoned this issue on appeal.  *See McLain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008); Fed. R. App. P. 28(a)(4).  Therefore, despite Goree's continued argument of these earlier claims, this appeal only concerns the grant of summary judgment on Goree's allegations

that she was subject to discrimination in her 2008 termination when LaSalle took over the management and operations of LPDC.

Title VII prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e. Where, as in this case, there is no direct evidence of discrimination, courts use the *McDonnell Douglas* framework to evaluate Title VII claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *See also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000). Like the district court, we assume *arguendo* that Goree has made out a *prima facie* case and therefore has satisfied the first step of *McDonnell Douglas*.

LPDC may rebut the presumption of discrimination raised by the *prima facie* case by demonstrating that it had legitimate, nondiscriminatory reasons for the adverse employment action taken. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). The record shows that it did. LPDC articulated that it made the decision to privatize in order to address overcrowding and budgetary concerns, and that LaSalle had discretion to choose the new superintendent. This court has previously recognized that reorganization is a legitimate, non-discriminatory reason for termination. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356–57 (5th Cir. 2007); *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001). LPDC produced evidence showing that LaSalle chose Thompson because it felt he was better qualified, and Goree was offered another position at LPDC's request. Goree admits that she refused both employment options offered to her, and was subsequently terminated.

Once LPDC articulates a legitimate, nondiscriminatory reason for Goree's termination, the burden shifts back to Goree to prove that the employer's

proffered explanation is pretextual. *McDonnell Douglas*, 411 U.S. at 802. "A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Nasti v. Cabi Specialty Chems.*, 492 F.3d 589, 593 (5th Cir. 2007) (internal quotation marks omitted); *See also Reeves*, 530 U.S. at 143. Goree did not meet this burden.

First, Goree's evidence does not raise a fact issue over whether LPDC's privatization was commercially necessary. *See Mato*, 267 F.3d at 452 (finding no pretext in a retaliation context because the plaintiff did not introduce evidence tending to contradict the employer's assertion that a reorganizational plan which led to the plaintiff's termination was necessary "to improve its operation and cut its budget."). By Goree's own admission, the problems facing LPDC were real and unresolved. She argues only that the problems were not any worse when the decision to privatize was made, and questions the choice of LaSalle based on a single Commission member's ties to the company. Goree's allegations—even if true—do not alter the fact that LPDC, acting through a vote of the entire Commission, made its decision to address the stated problems of deficits and overcrowding. As we have stated many times before, this court will not engage in second-guessing of an employer's business decisions. *See, e.g., LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *Mato*, 267 F.3d at 452. Neither the wisdom of LPDC's timing nor the choice of private company are up for debate when those actions were legitimate business decisions. Even proof that those decisions were in hindsight poorly made, as Goree asserts, would not establish that they were false or were mere pretext for discrimination. *Id.*

Furthermore, Goree admitted that she was not terminated as a direct

result of privatization, but only after her failure to accept either employment option offered to her. However, she did not present evidence that identical employment options were not offered to other LPDC employees, or that men who rejected those terms were treated more favorably. *See Berquist*, 500 F.3d at 356–57 (finding no pretext in the decision to terminate employees who refused to sign an agreement after an acquisition because similarly situated employees who agreed to be reassigned under modified terms were retained). Because Goree did not rebut LPDC's legitimate reason for her termination or offer evidence of disparate treatment in the transition, she has not raised a genuine dispute over whether her dismissal for failure to agree to modified employment terms was mere pretext.

Finally, to the extent Goree argues that she should have received the new superintendent position, she does not argue and has not put forth evidence to show she was "clearly better qualified" for that position than Thompson. *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). Goree points to the statements of LaSalle executives commending her work as interim superintendent and her high performance reviews. However, these statements all referenced her work before privatization; the summary judgment record shows that these same executives' assessment of her qualifications for a post-privatization role were much less favorable, particularly when compared to comments made about Thompson before his hire. LaSalle assessed that Thompson and Goree had different traits, and an employer has broad discretion to choose which type of experience it prefers when filling an open position. *See E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1445 (5th Cir. 1995).

None of Goree's arguments raised a fact issue as to the credibility of the reasons offered by LPDC for her termination or the existence of a true motive of

No. 10-31157

discrimination. The district court was able to reach this conclusion without making improper credibility assessments because the evidence submitted by Goree—even if taken as true—does not dispute the earnestness of LPDC's choices. Simply disputing LPDC's business judgment is not enough to prove pretext without producing evidence that the reasons stated were pretextual. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). Because Goree's pretext arguments do not raise a genuine issue of material fact as to whether LPDC discriminated against her because of her gender, we find that the district court properly granted summary judgment to LPDC on Goree's claims of discrimination. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.